Our last case of the day is Agenda No. 20, No. 128935, M.U., etc. v. Team Illinois Hockey Club, Inc. Counsel for the Appeal. Good morning. May it please the Court, my name is Tim Elliott and I represent Team Illinois and AHI, the Amateur Hockey Association of Illinois. This case involves Section 5 of the Illinois Human Rights Act and arises from a hockey team's brief suspension of a player. In 2019, M.U. was a hockey player on Team Illinois, a highly competitive and selective hockey program. In November of that year, her mother told the team's coach that M.U. was having suicidal ideations, but that she wanted M.U. to remain on the team under the coach's supervision. Coach made a simple request, can I get a doctor's note confirming that it's safe for her to continue to participate on the team? And he suspended M.U. pending receipt of that note. Twenty-seven days later, M.U.'s parents finally provided the doctor's note. She was reinstated to the team that same day and finished the season with Team Illinois. Now, M.U., through her parents, is asserting that Team Illinois's actions qualify as public accommodations discrimination under Section 5 of the IHRA. The Circuit Court, Chief Judge Bonnie Wheaton, dismissed the case and found that Section 5 did not apply. The appellate court reversed, and it found that while Team Illinois itself is not a place of public accommodation, because it practices and plays in an ice rink that is available and open to the public, that it effectively becomes a place of public accommodation and that Section 5 might apply. We submit that the trial court, Judge Wheaton, got it right and that the appellate court erred. And I hope today to argue three main points. Number one, the appellate court's ruling is a radical departure, both from the plain language of Section 5 and from 40 years of prior precedent. It cannot stand. Number two, if the appellate court's ruling is sustained in any part, then this court should provide guidance on the nexus required for an organization like Team Illinois to qualify under Section 5. And third, if the appellate court's ruling is sustained in any part, then this court should provide guidance on the parameters of the private club exemption. We ask this court to reverse the appellate court's ruling and to bring the state of the law on this issue back to where it has rested for the last 40 years. The appellate court erred badly, we would submit, in its decision on this case. For 40 years, Illinois courts have uniformly interpreted Section 5 to apply to discriminatory conduct that directly excludes someone from a physical place or location. We've cited a number of cases, but the Gilbert case, we would submit, is really on all fours with this case because it involved a doctor's note. The appellate court's decision in this case represents a profound change in direction in Section 5 and it dramatically expands its scope and meaning. What the appellate court effectively did here was to say that a person or organization that uses a place of public accommodation... Counsel, to what extent must an organization operate, as we understand that term, a place of public accommodation in order to subject it to liability under the Act? That's unclear in Illinois law. What the appellate court did, and I would take a step back and say, under the existing law, where cases were limited to the places of public accommodations themselves, this problem does not arise. Under the appellate court's ruling, where you are expanding the scope of liability under Section 5 to include not only the places, but also the groups that use them, you have to formulate a test for determining when those groups might become subject to it. What the appellate court said was operation or leasing is enough. As we pointed out in our papers, there's no statutory basis for that. That test was pulled from an ADA case where that language appears in the ADA. So we don't believe that provides the appropriate test. We actually think the appropriate test comes from, if you're going to look to federal law, from the Welsh case where the Seventh Circuit said there are instances where an organization effectively controls the facility to the point where the ticket to the facility is itself membership in the organization. The example they used was a YMCA, where in order to get into the Y, you have to be a member to the Y. That's very different from situations like this, where you have an ice rink that rents out time to numerous organizations. Team Illinois might be on the ice from 3 to 5 on a Thursday afternoon, and then the shoemaker school's second grade party might have the ice from 5 to 6, and then another team might come on from 6 to 8, and then you might have some other organization. There's no allegation, or could there be in this case, that Team Illinois controls access to Severn Bridges. It just doesn't. Under the appellate court's ruling, a group or organization or person that uses a place of public accommodation itself becomes a place of public accommodation for all intents and purposes. And it's important to follow that in this case. The statute, Section 5, says it's a violation to deny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any place of public accommodation. The interest protected there is the facilities, goods, and services of the place of public accommodation. Counselor? Yes. Now your argument, you haven't mentioned it yet, but my implication, basically your argument is PGA Tour v. Martin should not apply in this case. 100 percent, yes. Why? You know, there's a number of distinguishing factors between Martin in this case. One of them is paramount. But let me walk through them. First, it's a different legislative body. Our opposing counsel in this case would have you believe that Washington in 1989 is a proxy for Springfield in 1980. We don't agree with that. Number two, there are important statutory differences that are either ignored or underplayed by both the appellate court and by MU in this case. For example, as I've already mentioned, the terms leasing and operating appear in the ADA. They don't appear in the IHRA. The appellate court erred by placing emphasis on those terms. But there's another statutory difference that is really ignored by the appellate court. The ADA is broader because it not only protects access to the facilities, goods, and services of a place of public accommodation, it also reaches privileges of the place of public accommodation. That privileges language does not appear in the IHRA. And if you look at the Martin decision, a lot of its reasoning relied on a privileges analysis. Third, there are factual differences between what the PGA does and what Team Illinois does. The Supreme Court made it very clear that when the PGA comes in to play a tournament, they take over the course. They run and operate the course. They charge admission. They set up all the rules. They effectively become the operator. And you're not getting on that course unless you've bought a ticket or have been admitted to play by the PGA. There's no allegation of anything contrary here. Team Illinois is just one other organization that ranks number one from two to four on Thursdays. Fourth, there's a different question. By the time the case got to the Supreme Court, the PGA had dropped the private club argument. And the only question this was proceeding on was whether or not the players were a class that was intended to be protected by the ADA. That was the sole remaining argument. That's very different from this case. Those are all distinguishing factors. But I would take a step back and say the biggest single distinguishing factor is this. The claims at issue and the relief sought in Martin were all tied to a place. Casey Martin was not coming to the court saying, I want to be admitted to the PGA. I want to be fully a member of the PGA for all intents and purposes, for all activities, no matter where they occur. What Casey Martin was saying is, for the events that occur on golf courses, tied to a specific place, I want a specific accommodation, which is I want a golf cart. Because without that, I can't play on an equal standing with everybody else. The relief he sought was tied to the place. The claims he raised were tied to the place. That's not true here. MU is essentially saying, I got suspended from the team, and I wanted to get back on the team. That's totally untethered to any place or location. Their complaint is very upfront in that. What they allege is she was denied the facilities and services of Team Illinois. That's her operative claim. Let me ask you about Seven Bridges, the place where all of this took place. Does the hockey club have full use and facility? Do they take care of all of the other things that's required to keep up the facility for their hockey club? No, there's no allegation. Is it on a timed basis, or do they lease it for the year? That's not clear to me. That's not in the factual. The duration of the lease is not in the factual record. But Seven Bridges is an enormous facility. It's got different ice rinks. It's got concessions and lots of different amenities. The allegation is that Team Illinois leases ice time on one of the rinks for practices and home games and has an office there. Is your argument the fact that they're leasing it and they don't own it? Is that dispositive? No, I think our argument takes it a step further back and says we don't think you reach a control analysis. You don't have to reach that issue in this case because the alleged act of discrimination itself is not tied to a place. There are complaints, and this is where I was going. Can't the discrimination, you say, under these facts it's not, but is that in every single case it can't be tied to a place? I'm not sure I understand the... You said the alleged act of discrimination is not tied to a place. I mean, that's your argument. I doubt if it's your opponent. But are you saying that an alleged act of discrimination in this kind of case can never be tied to a place? Under these facts, we do not think it can or did, and I'm happy to get to that in a moment. On the broader question, can I envision a circumstance in which an act of saying you can't be part of this organization could give rise to a place of public accommodations discrimination? Absolutely. And the example that I would give to you is the Welsh case where they said, look, the YMCA is for all intents and purposes the building. And if you're not a member, you don't get in. That's very different from the expansive analysis here where the claim is that the plaintiff was deprived of association with the team. And the language they use is, Emmy was deprived of the facilities and services of Team Illinois. That's in their complaint on both claims, paragraphs 65 and 72. So what is meant by facilities? Facilities and services, what do you think they're implying when they say facilities? I think we can assume what services are, but what do they mean by facilities? What I presume them to mean is that wherever Team Illinois has something, whether it's a home game, an away game, a team dinner or whatever, that she was not welcome in that place where they were having that. The complaint is not limited to just the Seven Bridges events. The complaint is very clear that it was the team dinners, it was the travel. So by facilities, I think what she's saying is wherever that team was, whether it was in a locker room, at a public arena or a private arena, whether it was a team dinner, team bus, she was not welcome. I believe that's what she's saying by facilities. And that is a dramatic expansion of the statute. And I would encourage you to think not only of Team Illinois, but of the myriad of other organizations that make use of places with public accommodation. Because when a group becomes, or even an individual, it doesn't have to be a group, when someone becomes a place of public accommodation simply because they use it, that is a huge expansion of liability that is completely untethered to the language. It could be a second grade class having a field trip. It could be a religious organization that meets in a community while their mosque or synagogue or church is being built. It could be an individual parent who has a birthday party or a bar mitzvah or whatever at a public arena. It could be a myriad of different things. All of those groups, under the appellate court's reasoning, are now at risk of liability under this statute. And there's nothing in the language of the statute or its legislative history to suggest that the legislature ever contemplated, even remotely contemplated, much less desired that type of result. So, counsel, if there was another activity taking place at seven bridges that MU wanted to attend, nothing prevented her from doing that, correct? That's correct. And there's no allegation whatsoever on that. So while Team Illinois was having their team practice on ice rink one, she could go to the free skate on ice rink two or the restaurant or any of the other amenities in there. There's no dispute on that point. The only thing that she was prohibited from participating in, and again, what they're really aiming at is the associational interest with the team, which isn't protected under the Act, but what she was not allowed to participate in while the team was waiting for her parents to deliver the note was simply the portion of the facility that was being used by Team Illinois. And that puts her on the same footing as every other member of the general public. No member of the general public is welcome to walk into the locker room while Team Illinois is in there or just jump on the ice. That part was rented privately, the same as every other group. As I pointed out, this really represents a dramatic expansion of the Act. As I've said, it's untethered to anything in the Act, which really is limited to physical places. And that type of profound change, I would submit to you, needs to originate with the legislature, not with the judiciary. If this statute is to become a catch-all to regulate all of the groups that use places of public accommodation rather than the places themselves, that's something that needs to originate across the street. Where would you suggest that the court draw the line? We would suggest that the court draw the line where it has rested for the past 40 years. As the appellate court itself noted, there has not been a case in the last 40 years where the action has not been against the place of public accommodation itself. That seems the appropriate place to draw the line. And again, there may be instances where someone can articulate a claim and say, this particular organization, whether they're the lessee or the owner or an assinee or whatever other, you know, test, you know, relationship. Mike says this organization so effectively controls the facility that their refusal to admit me or some other action they've taken forbids me from entering the facility, but that's not this set of facts. Counsel, do you think the Declaration of Policy, which became effective on January 1st, 2023, would expand the definition? It says freedom from unlawful discrimination and the availability of public accommodations. I do not believe it changes the statutory limitations on Section 5. I recognize that this is an anti-discrimination statute and it is to be construed broadly. We concede that. But any construction has to be tied to the language that's used. And in Section 5, the language that's used is places. That represents a deliberate legislative choice to reserve it to just places. It's very clear that MU wishes that the statute went further than that and also regulated the internal operations of the organizations that use them. But again, that's a legislative policy prerogative. That's not what the statute says. And so this cannot be, provision cannot become a catch-all and catch all manner of discriminatory conduct. It has to be limited by its language. And if simply asking MU to provide a doctor's note to show that she can safely participate, if that is a discriminatory act, if it is an act of discrimination, then MU's remedy is to go to the General Assembly and get some new statute because it's not an act of public accommodations discrimination. I see my time is almost up. If anyone has any further questions, otherwise I'll save my time for the ball. Thank you very much. Counsel to the appellee. Good morning, Your Honors. My name is Charlie Weissong. I represent the plaintiff appellee here, Morgan Erso and her parents. I do want to acknowledge Morgan and her mother Kelly are here for argument this morning. When she was 14, Teen Illinois barred Morgan Erso from skating on the ice rink at Seven Bridges because she had depression. While the other teammates on the team, the other players, were allowed to skate on the ice rink. At Seven Bridges Ice Arena. That is the definition of discrimination. And this case is about whether it's discrimination that violates the Illinois Human Rights Act or whether Teen Illinois is somehow exempt. Counsel, did the team have an interest or a right to ask her to bring a doctor's note just to ensure her own safety?  because the complaint is clear. This case is not about a doctor's note. Right? If you look at the complaint, the problem with Teen Illinois was that they said you need a doctor's note that attests you can participate 100% in every game, every activity, every dinner, every part of this program and you can't come back until you can attest to that. And that was an illegal standard never imposed on any other player. It's discrimination. They said you come back when you're a happy, smiling kid. If it was about a doctor's note, we wouldn't be here. You come back when they dropped the illegal standard and then she could return to the team. I want to make that very clear. This is not about a doctor's note. It's about an unlawful condition imposed on Morgan because of her disability that kept her off the I-67 bridges. And that's discrimination. It violates the language of the Act. And under the language of the Act, it does not matter that Teen Illinois isn't the owner. They continue to press this argument today that claims are limited to claims against the public accommodation. But that is not what the law says. Well, let's talk about that. Certainly the organization in and of itself is not a place of accommodation, public accommodation, correct? Just freestanding their membership list, et cetera, that's not a place of accommodation, correct? That is not the argument we are bringing to this court. Your Honor, there are cases that analyze teams. But here, correct, Teen Illinois is a person. So they're not in that sense that they are an organization. That is not, you agree, they are not a place of public accommodation in that sense. Yes, Your Honor. The way to analyze the situation is they are a person under the statute and subject to the Human Rights Act. I'm not sure I follow that. But you agree that they do, they rent a portion of the place of public accommodation, is that right? Yes, Your Honor. And because they rent a place of public accommodation, a piece of it, a time of it, not exclusively, that makes them a place of public accommodation. That's your argument, right? No, no. Our argument, Your Honor, is that they are a person under the statute and they denied Morgan the equal enjoyment of seven bridges, the public accommodation. Right? She was not allowed to skate on the ice rink like the similarly situated players because of an unlawful reason. It's the requirements of the statute that are put forth. And the statute doesn't say some people are prohibited from discrimination, right? It doesn't say owners. It doesn't say lessors. It doesn't say operators. We don't have those limitations. The legislature didn't put them there. The legislation says that the act applies to any person, every renter, every lessee, every organization, every person, every corporation is subject to this act to the extent, but only to the extent. You really are arguing what your opponent says you're arguing, that anyone, any person who uses a public, a place of public accommodation,  Anyone. Rent a place for a birthday party. All of the examples I've used. That really is your argument? No, Your Honor. It's not about Tinoi being covered or about an entity. They are covered. They are defined within person. The limiting principle of the act is not who is covered, right? That's not what the law says. It says the discriminatory act itself has to deny the enjoyment of the accommodation. Right? You need an intersection. I went out to Polignale for my grandkids' birthday party. But I, in that, I only, the invitation is only to certain kids and not to others. Therefore, I am discriminating as a place of public accommodation? No, Your Honor. The Supreme Court explained, the United States Supreme Court explained decades ago in the Roberts J.C. case that those interpersonal familial relationships, whether they're romantic or family, are protected by the First Amendment. They could never fall within the act. And that's not what's going on here. I want to be clear about the facts. Right? Tinoi is a corporation that sells hockey to kids. The chance to play hockey at Seven Bridges. This is where they operate. It's where their office is. It's where their locker room is 365 days a year. They aren't... If my example is a school. We're going to have the, you know, the kindergarten graduation party at Polignale. But we're only going to allow these kindergarteners to come. Do they fall under this act? Yes, Your Honor. A school is defined as a public accommodation. It's directly within the act. No, no. And the school has rented a bowling alley and said other kids can't come to the bowling alley. Only the kids in our school. Well, that's not discrimination, Your Honor. Saying the kids in the second grade class... That's not a question. My question is would that conduct fit under the statute of... Does that make the people who are organizing the event at the bowling alley fall under the statute? The law applies to discriminatory actions that deny the enjoyment of the accommodation. So in your hypothetical, Judge, yes, the school can't say the white kids can go to the bowling alley and the black kids can't. I'm saying... The kindergarteners. Only the kindergarteners in our school. Judge, that's fine. That's not discrimination. Saying kindergarteners only is not a protected status under the statute. But your original question was... I'm not talking about what was a discriminatory practice. I'm talking about what is a place of public accommodation. And you were agreeing that if a group said we're going to rent out the bowling alley and just have the invited people that therefore they fall within the act. Is that correct? For the use of the accommodation right. If a group... And I want to be very clear about this. If a group is using the bowling alley, it must not discriminate on the basis of race or disability or other basis. That does not mean they have to let everyone join their trip to the bowling alley. What it means is they must treat similarly situated people alike. And the group can't say our black members get to go to the bowling alley and our white members don't. They don't get to say everybody gets to go except the Muslim participants. In the use of that accommodation because that would be a discriminatory action that denies the enjoyment of the accommodation. That's what the language says in the statute. It doesn't say only owners are subject to the law. That language isn't in there. We don't have that limitation like the ADA does. It says any person. And there's no carve out for private organizations there's no carve out for non-profits there's no carve out for membership organizations. Although I want to be clear that Team Illinois is not a membership organization in that sense. They sell hockey anyone can go try out if you make the team then you get to play. Morgan is the customer of Team Illinois. She made the team like all the other kids   hockey at Seven Bridges and then she was denied only because of her discrimination. Because of her disability. Your Honor, does that make any sense? Does that make any sense? But they're trying to insert limitations into the act that aren't there. It's not limited to owners. It's not limited to places that are open to the public without prescreening. That is the crux of their argument and it's contrary to the text of the act. Because we know that the legislature defined accommodation to include universities which have elaborate and extensive prescreening procedures. There are still accommodations. We know that child care providers and health care centers and social service agencies are covered by this act. There are accommodations and they prescreen their participants. And the argument, this limitation they talk about this 40 years is built on cases that have been overturned. These are old cases that are bad law. They didn't admit   changed the law. All those narrow cases were about the language business facility of any kind open to the public without prescreening. They didn't admit once in their argument that it was open to the public. What does that mean? And then basket cut and dry and Gilbert the court interpreted that and interpreted it narrowly. And do you know what? The civil rights groups did go across the street to the legislature. They put an amicus brief in here, the attorney general put an amicus brief in here that has the whole list and the legislature changed the law. They overturned those cases. They deleted all that language and this court should make that clear now that when the legislature if there were any doubt before when the legislature amended the definition of public accommodation to use the ADA language that any thought that prescreening took you outside the law is gone. And that's particularly why the Martin case is directly on point as the appellate court recognized. Right? The legislature in 2007 adopted the definition of public accommodation from the ADA and under the ADA the Martin case makes clear that a group the PGA is using a public accommodation a golf course they cannot discriminate in doing so. It's the same here. Team Illinois is a group they're using an ice arena they cannot discriminate in doing so. And it doesn't matter that the players have to try out or that it's a competitive selection process. They are still protected from discrimination tied to the public accommodation which is another point I want to make very clear. This case is about Morgan not being allowed to skate at seven bridges. That is what Team Illinois offers. That is what she was denied and that was discrimination within the act. The fact that she was also kicked off an email list that goes to show how gratuitous their actions were but we're not saying that that separately and independently violates the law. We're saying Morgan was a member of Team Illinois. She was never kicked off. She was actually never suspended because there's a process for that in youth hockey. She was just said you cannot skate here  with the other players. It does not matter, Your Honor. The discussion and it wasn't disputed that PGA was operating of course the PGA matters because the ADA is limited to operators. The Human Rights Act covers operators and owners and lessees and everybody else. We don't have to show that they're an operator of seven bridges for them to fall within the act and in fact Team Illinois is tied to seven bridges if it mattered. This is their facility where they offer all of their programming. This is the core of where the discrimination manifests and the law says in Illinois if you use a public accommodation you cannot discriminate in that use. We're not talking about reaching all of Team Illinois as an organization. We're talking about the discreet acts of barring her from skating on the ice rink at seven bridges and that pleads  directly within the act and that's why not only Martin but all the cases since Martin consistently recognize that teens and sports associations are subject to anti-discrimination laws. The NCAA can't discriminate. The high school sports association in Illinois can't discriminate. Little league teams can't discriminate. PE football teams can't discriminate. This is not novel and Team Illinois is no different. They cannot deny Morgan because of her disability the full and equal enjoyment of a public accommodation like seven bridges. And I want to touch I'm sorry okay you know this is Martin's the ADA this is the state act so respond to that. It's the Springfield versus Washington. Multiple responses. The language of our act is broader than the ADA which we set out point by point in our brief. We cover everyone that only covers the operators. To the extent it matters the legislature undisputedly copied from the ADA in 2007 which is a pretty good sign that the legislature was looking to make our act at least as broad as the ADA and you don't even have to get that far your honor because the language of the act is clear on its face that it applies to any person. Any person that's what the law says. I want to touch on this snack bar point because it's a peculiar argument. They're claiming that the discrimination against Morgan didn't happen because she could have still gone to the seven bridges snack bar. We don't dispute she could eat at the snack bar but that's not what the act guarantees. This is not an act that says you shall have access to a public accommodation. The protections don't end at the front door. It says you shall have full and equal enjoyment of that accommodation. There's no partial discrimination defense to the act. You can't discriminate on ice rink one on the basis of race or disability or sex or any other protected category and say well but it's okay because rink two is still available. Restaurants can't have a Latinos only section by saying well Asian customers can sit up front. That's not full and equal enjoyment and our act is very clear in the language itself. It says full and equal enjoyment of a public accommodation. So your argument really goes to the fact that the part of seven bridges that was leased and therefore controlled by the hockey club, that's the part that she didn't have access to and she should have. She did not have full and equal access to that ice rink the same as similarly situated people. It's not about whether someone off the street could come join a hockey team, right? That's a non-discriminatory basis to treat someone differently but she joined the team. She signed up. She paid to play hockey at seven bridges just like the other  So does your theory apply to all those other places as well? If it's a public accommodation, if they're having a tournament at an arena in Springfield or in Rosemont and those are public accommodations, they can't discriminate with regard to those accommodations either. The law is bounded, right? You have to have a connection between the discriminatory act and the enjoyment of a public accommodation in Illinois. Because that's what they What exactly is the nexus between the two? Under these facts. Under these facts, Team Illinois stopped Morgan from enjoying the facilities and services of Seven Bridges. That was the effect. That was what the law played somewhere else. Would the nexus still be the same? What would the nexus be in that other place? In every question, every situation, the question is the same.  discriminatory action cause the denial of the enjoyment of a public accommodation? Right? Look at the language of the Act, Your Honor. Their second clause. It's not limited to owners and operators. It does require that the discrimination deny the enjoyment of a public accommodation. Let me get back to ask you another question that I asked earlier and I'm not sure if I understood the answer. The fact that the team asked for a note that required MU to be able to participate at all. Was there less than 100% participation from other players? Yes, Your Honor. People miss hockey all the time. There's no attendance requirement. Kids miss church activities. Was there anything said about attendance? I mean, 100% participation. What exactly does that mean? That's what they put in there. It means that she was admittedly not allowed to skate with team Illinois because of her disability. This is a section 2615 motion. Maybe I'm not articulating my question clearly. Hockey is a sport that's a physical sport. I'm simply asking whether there was a legitimate reason for the hockey club to require that this player be physically and mentally able to participate in the sport. Is that a legitimate inquiry on their part or requirement? Your Honor, it is fair for the hockey club to inquire about their physical ability to play hockey. We're not saying they couldn't ask. We're not asking for a doctorate. We're saying you can't signal Morgan out immediately because of her mental health disability and hold her to a standard that no one else has helped to. How do you know that they don't require that from the other players? Was there any evidence of that, that they don't require 100% participation from the other players? Yes, Your Honor. It's pled directly in the complaint. We're here on a section 2615 motion. Morgan's been a part of this team for three years. She's named and we've affirmatively alleged, even though we don't have to, that this was never applied to anybody else. Kids miss hockey practice all the time for a variety of reasons. So this was dismissed 2615? Correct. So probably there's not evidence in the record if Team Illinois has standards that all the players have to meet. We probably don't know that yet, right? There's nothing in the record about that, and we have affirmatively pled that there was no attendance requirement, right? We have pled that in the complaint, which has to be taken as true. And the other thing  to touch on, I do want to touch on my last minute with two brief points. The first is the issue of whether, as Team Illinois has said here, the Act is limited to physical places. It is not. The language does not say physical place, and there's no reason to think that the legislature is trying to cover a physical school, but not an online school, to cover a physical store, but not Amazon or an online store. It's not presented by the facts of this case, because we have a physical place, but the Attorney General sets out at length in the amicus brief why if you address the issue, you should not hold that this particular Act is limited to physical places, just as the ADA has not been held to that. I would just say the private club issue is an affirmative defense. It's not properly before the court. Thank you very much counsel. Thank you, may it please the court, I'm going to try and respond to a number of the points that Mr. Wysong raised, but I want to start by saying this, in an effort to try and fit this particular case into section 5, they are forced to use language that is actually in the statute. Let me start with the 2007 amendments. We briefed this heavily. They contend that the 2007 amendments represented a sea change, a deliberate legislative attempt to expand the Act and make it a mirror image of the ADA. It's just simply not the case. What the court did was replace one set of places with another set. Importantly, there's two things that the legislature did not do. Number one, the seminal, the most important part of the reasoning in Gilbert and Cut and Dried was the court's holdings that a prescreening or selective process made those particular defendants not subject to the Act. They said, hey, the scuba school isn't open to everybody. It's only open to everybody who meets certain fiscal requirements and has doctor's approval. The 2007 amendments didn't say anything about prescreening. And if their argument was correct, that the General Assembly was offended by those decisions, you would have expected to see something about those prescreening requirements. It's not in there at all. But the second thing that the General Assembly didn't do is they deliberately kept the IHRA more narrow than the ADA. They could have expanded Section 102 to pick up privileges, which, as I said in my interview on the Martin case, the Martin case really turned a lot on privileges. They didn't. So this notion  2007 amendments were designed to radically overhaul the IHRA, reverse or overturn all prior authority, there's no evidence of that, either from the statutory language or as we spelled out in the legislative history. Second, he made a point of saying this claim is really about seven bridges and that their complaint was really about seven bridges. It's not. It's not. Paragraph 65 and 72 of their complaints say that their complaint is that she was deprived of the full enjoyment of the facilities and services of Team Illinois. And there's nothing in that complaint that says we really want to get into seven bridges.  get into the networking activities, the email communications, the team dinners, everything. There's nothing in their complaint that limits it to seven bridges and that again I think is a distinguishing factor for Martin. Third, what he's really arguing for is sort of a but-for causation standard which generally in Illinois is rejected in favor of approximate cost standard. His argument is any action by any group that ultimately uses a place of public accommodation and results either directly or indirectly in someone not being able to go there is a violation of the act. Chief Justice, I think your examples at the beginning of the question were very clear. If I were to belong to a Swedish American heritage club whose membership is limited to people of Swedish American heritage and we were to wind up having an event at a library and someone who wanted to join the club but felt excluded because of a different location, we're not going to allow you in this restaurant. We're not going to       on this public transit. We're not going to allow you in this restaurant. We're not going to allow you in this theater. That's an act that is directly tied to a physical location. That's very different from an act that is neutral as to location but simply says this is an organization that you didn't qualify for or you don't meet the membership requirements. And then that group by accident or happenstance or some arbitrary factor winds up having an event at the park. That's a dramatic expansion of this act. And again, the ramifications of that are boundless. And one must look back at the statute and there's nothing in the statute that suggests that's what they're trying to, excuse me, trying to reach. Nothing whatsoever. We are just a renter of a portion of a facility for a limited duration. There's no allegation, and Justice Kinney, I think this goes to your question earlier, there's no allegation nor could there be that Team Illinois takes care of the maintenance or the security or the upkeep or any other things that one would expect of someone who's really in control of a particular facility. There's no allegation               would expect of someone who's really in control of a particular facility. So, let me just look at my notes. I believe I've got  1,  20, number 1, 2, 8, 9, 3, 5, MU,   Team Illinois Hockey Club Inc., et al. Will be taken under advice. Thank you. Thank you. Thank you. Thank you. Thank you.                   Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.